IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Stephen C. Lambert, | ) | Civil Action No. 7:08-925-GRA-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |
| Roechling Automotive Duncan, LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 41.] The plaintiff has plead claims for discrimination, on account of his national origin, pursuant to Title VII of the Civil Rights Act of 1964, as amended, including discriminatory discharge and harassment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The defendant, located in Duncan, South Carolina, was established in 1999 and produces automotive plastic parts for BMW, Mercedes, and other automotive manufacturers. (Merritt Dep. at 13.) The plaintiff was hired by the defendant in 2002

1

and later promoted to Kaizen supervisor on April 7, 2006.  (See Def. Ex. Ex. 3 at 3.) The plaintiff held this position for approximately one year until he was discharged effective June 30, 2007.  *Id*.

In 2006, Rob Merritt, manager of the defendant's Duncan plant and a member of the parent company's Board of Directors, made a private recommendation to the Board for a three phase lay-off which would eliminate a minimum of 125 employee positions. (Merritt Dep. at 38.)  The recommendation was based on serious concerns over the defendant's future financial viability.  *Id*.  The recommendation was accepted and the plaintiff's employment was, in fact, terminated in phase 2 of that reorganization. *Id*. at 7.

The plaintiff contends, however, that he was discharged because he was American and because Ulrich Mauss, a German and the defendant's Company President, harbored animus towards Americans and preferred German workers.  The plaintiff has recounted instances where Mauss and his assistant, Stefan Thiele, expressed these alleged sentiments publically.  Those remarks will be addressed in greater detail below.

The plaintiff claims that he was initially told that his discharge was for financial reasons but that he later received an internal memorandum indicating that Thiele, a German, had been appointed Kaizen leader in his place.  (Pl. Ex. 1.)  As a result, the plaintiff filed a Charge of Discrimination with the EEOC.  This lawsuit followed.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-

moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

The plaintiff has pled both a discriminatory discharge claim and a harassment, or hostile work environment claim, based on his national origin. The Court will address each in turn.

I.     NATIONAL ORIGIN DISCRIMINATION

The plaintiff contends that he was discriminated against on account of his national origin as an American, in that the defendant terminated his employment instead of that of an allegedly less qualified German employee, Stefan Thiele.

As the Fourth Circuit has explained, the plaintiff may avert the defendant's summary judgment motion and establish his national origin claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as national origin motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas* ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking

5

an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

The defendant has only considered the plaintiff's case in light of *McDonnell Douglas*, arguing that the plaintiff can neither establish a *prima facie* case nor prove that its legitimate, non-discriminatory reason for termination was false. The plaintiff responds, and the Court tends to agree, that the plaintiff may, in fact, have sufficiently strong circumstantial evidence to raise a genuine issue of material fact as to whether the plaintiff's national origin motivated the defendant's adverse employment decision taken against the plaintiff, even without assistance of the *McDonnell Douglas* framework. *See Diamond*, 416 F.3d at 318. The Court, therefore, will first consider whether the plaintiff can survive summary judgment based on ordinary methods of proof and then with the aid of the *McDonnell Douglas* burden-shifting framework.

  **A. Ordinary Methods of Proof**

The Fourth Circuit has long held that a plaintiff may prove his discrimination case "under ordinary standards of proof, by direct or indirect evidence relevant to and

sufficiently probative of the issue," without recourse to *McDonnell Douglas*. *EEOC v. Clay Printing, Co.*, 955 F.2d 936, 940 (4th Cir.1992). Using ordinary standards of proof, the plaintiff must demonstrate (1) that he was an employee covered by Title VII; (2) who suffered an unfavorable action by an employer covered by Title VII; and (3) that national origin was an impermissible factor in the action even if it was not the sole factor. *Diamond*, 416 F.3d at 318; Clay, 955 F.2d at 941. In overcoming a motion for summary judgment, therefore, the plaintiff has to "produce direct evidence of a stated purpose to discriminate [on the basis of national origin] and/or circumstantial evidence of a stated purpose to discriminate [on the basis of national origin] of sufficient probative force to reflect a genuine issue of material fact." *Clay*, 955 F.2d at 941. The first two elements are not in dispute.

The plaintiff has submitted the following indirect or circumstantial evidence that Ulrich Mauss, the defendant's Company President, and Stefan Thiele, Mauss's assistant, harbored animus towards Americans and may have been involved in the decision to terminate the plaintiff's employment based upon such animus:

- Wolfgang Bauer and Franz Berndobler, two company managers of the defendant who were German, stated to the plaintiff that Mauss is "dangerous, he doesn't like Americans. He doesn't like being over here. He thinks we are all incompetent . . . ." (Pl. Dep. at 49.)

- On one occasion, Mauss grabbed a woman who was having trouble putting a part together, shoved her aside, said "I'll do it" and called her a stupid American bitch.[1] (Pl. Dep. at 34.)

---

[1] The defendant contends that the plaintiff confessed to not being present during this incident. That would not be the Court's view of the testimony. The plaintiff seems to state that he observed Mauss's interaction with the woman (R. at 34) but that he had only heard of another incident where Mauss had thrown a part at an individual (R. at 36).

- Mauss said to the plaintiff, "I'll fire your stupid ass. You're no better than this bitch over here working on a machine." (Pl. Dep. at 36.)

- Both Thiele and Mauss's administrative assistant, Tim Mittman, told the plaintiff that Mauss had a plan to increase the German presence in the plant. (Pl. Dep. at 76 -77.)

- Between 6 and 12 times, Thiele complained, "American's can't build cars" and "[i]f you want it done right get a German." (Pl. Dep. at 14, 30.)

- Thiele would combine those comments with remarks like, "This is South Carolina, we don't need a reason to fire you. We can fire you today. We can fire you right now." (Pl. Dep. at 14.)

- Mauss said, "That is the problem with the American work ethic, that you spend too much time with your families, you think families are this. Families don't make paychecks." (Pl. Dep. at 112.)

- Anecdotally, it was suggested that more than 20 American employees believed that Mauss preferred German workers. (Brookshire Dep. 17-18.)

The Court thinks that the probative force of this evidence rests in its tendency to reveal harbored animus and to presage, if only indirectly, the termination of the plaintiff's employment.

The defendant objects to this evidence on two grounds. First, that it all constitutes inadmissible hearsay and, second, that Mauss was not a decision maker in regards to the termination. Both rejoinders fail.

The Court concedes that the plaintiff relies heavily, essentially exclusively, on his own testimony regarding the comments of others. While this is problematic it is not fatal. As an initial matter, the Court does not believe the statements are impermissible hearsay. Namely, the plaintiff has recounted statements made by other employees of

the defendant which arguably constitute a party admission admissible under Fed. R. Evid. 801(d)(2)(D). *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1242 (10th Cir.1990); *Cuddy v. Wal-Mart Super Center, Inc.*, 993 F. Supp. 962, 967 (W.D. Va.1998). So long as statements are made concerning a matter within the scope of employment, even statements of lower grade employees may qualify. See *Rainbow*, 896 F.2d at 1242; *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 111 (M.D.N.C. 1993.) To the Court, the evidence suggests that the recounted statements were all made by employees within the context of their employment and related to the functional scope of their agency. The defendant has not argued otherwise. Accordingly, the Court will consider it as effective evidence for purposes of summary judgment.

Moreover, it is not for the Court to measure the credibility of the plaintiff's testimony, on summary judgment. A jury may choose to accept it over the defendant's evidence or reject it. This is true even if the plaintiff's only evidence is his own testimony and even if the defendant has more evidence and of more varied kind. The plaintiff may very well prove more believable to a jury than ten witnesses of the defendant. It cannot, and should not, be determined now.

As to Mauss's involvement in the decision to terminate the plaintiff, issues of fact exist. The defendant has put forward evidence that the reorganization which ostensibly led to the plaintiff's firing, was the sole idea of Rob Merritt, manager of the defendant's Duncan, South Carolina plant, exclusively. (Merritt Dep. at 70.) The plaintiff, however, has testified that Merritt expressly told him, "I assure you this decision did not come

9

from this plant. This plant had no involvement with it whatsoever. We had no say-so in it whatsoever" and "*I was given the list by Ulrich [Mauss] and told to terminate.*" (Pl. Dep. at 60 (emphasis added).) Moreover, whether or not the idea was Merritt's alone does not eliminate the possibility that Mauss had a role in identifying specific individuals to be discharged. There is evidence he did. Issues of fact, therefore, remain as to the extent of Mauss's involvement. Thus, statements attributable to him regarding national origin animus are relevant and probative to demonstrating that a reasonable jury might be able to conclude that the plaintiff was fired, in part, for being American.

The Court has considered the testimony of the plaintiff and would recommend denying summary judgment on the basis of it alone. The statements concern possible decision makers (Pl. Dep. at 34, 36, 49, 60) and relate directly to the termination decision (Pl. Dep. at 14, 36.) And unlike a case like *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 178 (1st 2008), cited by the defendant, where disparaging remarks were made concerning the plaintiff's Jamaican nationality, the remarks made by Mauss and others relate very specifically to a prejudicial belief that Americans, by place of origin, have poorer *work performance* and should be fired as a result. It is a close call and the Court would not call the evidence direct. But, it is sufficiently probative indirect or circumstantial evidence from which a jury would be able to find for the plaintiff, even without *McDonnell Douglas*.

Accordingly, the Court would recommend denying summary judgment.

**B.     *McDonnell Douglas***

But even if the plaintiff's circumstantial evidence is not strong enough to survive

summary judgment when viewed in the context of the ordinary methods of proof, the Court finds that the plaintiff can create necessary issues of fact by recourse to *McDonnell Douglas*.

### 1. *Prima Facie* Case

The plaintiff can establish a *prima facie case* of discriminatory discharge under Title VII by showing: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time the employer took the adverse employment action, he was performing at a level that met her employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class or other employees who are not members of the protected class were retained under apparently similar circumstances. *See Allen v. BMW Mfg. Co.*, LLC, 2008 WL 78741, at *1(4th Cir. January 8, 2008); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir.2004); King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999). The defendant contends that the plaintiff has not created any genuine issue of fact as to element four.

The defendant is adamant that the plaintiff was replaced by an American, Robert Wiseman. The defendant has submitted the testimony of the only two employees remaining in the Kaizen Department after the plaintiff was fired, in support. (Landen Dep. at 7; Radford Dep. at 8-9; see also Mittmon Dep. at 15.)

The problem, of course, is that the plaintiff has produced one of the defendant's internal memoranda, dated June 26, 2007, and circulated four days before the termination of the plaintiff's employment, which stated: "Stefan Thiele: will become the

11

Kaizen leader within the plant." (Pl. Ex. 1 (emphasis in original).) As stated, Thiele is German. Kaizen leader or supervisor was the title of the plaintiff's position. (Def. Ex. Ex. 3 at 3.) That same internal memorandum stated that Wiseman would "take the sales responsibility for Behr, Siemens, Edscha and other small customers." (Pl. Ex. 1.) The defendant's answers to the plaintiff's interrogatories identifies Thiele as the only Kaizen Supervisor after the plaintiff. (Def. Ex. Ex. 3 at 3.) Wiseman is identified as an Engineering Manager. *Id*. All of this supports the plaintiff's position that the German Thiele, and not the American Wiseman, replaced him.

The defendant would try to characterize the memorandum as not a final determination as to the plaintiff's replacement and that it was intended only to "calm the plant" concerning the reorganization. (Merritt Dep. at 53.) The defendant would further emphasize the testimony of the employees, cited above, which expressly claims that Wiseman replaced the plaintiff. And, all of this may surely be true. But the arguments the defendant makes go to the weight of the evidence; the defendant's position does not eliminate the presence of the plaintiff's evidence. The Court may not weigh the two. It is enough that the plaintiff has some evidence. And from that evidence, the Court is convinced that a reasonable jury could easily conclude, based on the memorandum and the defendant's interrogatory answer, that the person who replaced the plaintiff was, in fact, Thiele, an individual outside of the protected class.

Accordingly, the plaintiff has created issues of fact as to his *prima facie* case of discriminatory discharge.

### 2.     Legitimate, Non-Discriminatory Reason

The defendant has put forward the following legitimate, non-discriminatory reasons for terminating the plaintiff's employment: downsizing the plant due to overstaffing and decreased income for the company. Budgetary constraints or economic concerns are legitimate reasons for the strategic reorganization of a workplace. *See Mereish v. Walker*, 359 F.3d 330, 335-336 (4th Cir. 2004).

### 3.     Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of his application was, in fact, an unlawful one. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000).

As an initial matter, the Court would find that the numerous comments cited above, in regards to the ordinary methods of proof, raise suspicions regarding the veracity of the professed reason for the plaintiff's termination. This evidence of a another side of the story necessarily "create[s] a conflict" suitable for juror resolution. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007). On that basis alone, the Court would recommend that the plaintiff has created issues of fact as to the pretextual nature of the defendant's nondiscriminatory reason – namely, there is an alternative story to be believed.

The plaintiff would also attempt to satisfy his burden, at this stage, by suggesting that the defendant's proffered reasons are false for defendant's shifting position as to who replaced him. The plaintiff is correct that the Fourth Circuit has held that shifting

13

defenses and explanations for a defendant's actions are sufficient evidence of pretext to survive summary judgment. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir.2001); *Alvarado v. Board of Trustees*, 928 F.2d 118, (4th Cir.1991).

The plaintiff has put forward evidence that the defendant originally stated to the EEOC that the plaintiff's job responsibilities were assumed by Thiele as part of a newly created position. (Pl. Exs. 4, 5.) By contrast, the defendant now represents that Wiseman inherited the plaintiff's responsibilities. The Court would agree, over the defendant's objection, that this is a change in position. The question, however, is whether it is a change in position regarding the reason for his *termination*. Technically, it is not. The shifting position only regards the plaintiff's replacement. But, the Court thinks that the point is relevant, indirectly. To the extent the defendant was attempting to hide national origin discrimination as a basis for termination, concealing the fact that the plaintiff's replacement was German would be critical. The Court is not recommending this view but the evidence would at least allow a reasonable juror to potentially conclude.

The plaintiff has also submitted financial records, which he believes demonstrate that the defendant was not in the dire financial straits alleged. The plaintiff has not made any real effort to expound upon this summary argument. And, the Court need not seriously consider it because there appears to be sufficient other evidence of pretext to the plaintiff's credit.

The plaintiff has submitted sufficient evidence to create issues of fact concerning his discriminatory discharge claim, when considered either under ordinary methods of

14

proof or *McDonnell Douglas*. It should not, therefore, not be dismissed.

## II.     Harassment/Hostile Work Environment Claim

Lastly, the plaintiff contends that the defendant harassed him by creating a hostile work environment on account of his national origin. To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that he was subjected to (1) unwelcome harassment; (2) based on his race; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir.2003) (en banc). First, the plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

The plaintiff does not expressly contend that these statements were personally offensive to him, although such a claim may reasonably be implicit in the fact that he brought the suit. Regardless, the Court finds no genuine issue remains as to the objective inquiry, however. The objective inquiry "is not, and by its nature cannot be, a mathematically precise test." *Harris,* 510 U.S. at 22. Rather, when determining whether

15

the harassing conduct was objectively "severe or pervasive," we must look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23; *Ocheltree*, 335 F.3d at 333. "[N]o single factor is" dispositive, *Harris*, 510 U.S. at 23, as "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," *Oncale*, 523 U.S. at 81-82.

The plaintiff has produced no evidence that these comments were substantially frequent, that they were unusually threatening to him, or that they materially interfered with his job performance. *See Harris*, 570 U.S. at 23. Moreover, "isolated incidents," unless extremely serious, will not support a claim for a hostile work environment claim. The Court does not believe that a reasonable jury could conclude from the handful of comments that the plaintiff has suffered "persistent, demeaning, unrelenting, and widespread" harassment on account of his national origin. *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir.1997). The evidence is certainly some proof of discriminatory intent; it does not appear to rise, however, to the level of abusive or harassing behavior because it lacks either extreme pervasiveness or severity. *See Thompson*, 522 F.3d at 180 (finding three comments disparaging Jamaicans insufficient to create harassing environment).

The plaintiff has made no real effort to argue otherwise.

16

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 41] be granted, in part, and denied, in part. The motion should be denied as to the plaintiff's discriminatory discharge claim and granted as to the plaintiff's harassment claim.

IT IS SO RECOMMENDED.

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

July 10, 2009
Greenville, South Carolina.